UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>JOSE D CRUZ<br><br>Debtor. | Chapter 13<br>Case No. 10-43793 -MSH |
| JOSE D CRUZ,<br><br>Plaintiff<br><br>v.<br><br>HACIENDA ASSOCIATES, LLC and<br>WELLS FARGO BANK, N.A.,<br><br>Defendants. | Adv. Pro. No. 11-04006 |

**MEMORANDUM OF DECISION ON PLAINTIFF'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

   Before me is the emergency motion of the plaintiff, Jose D. Cruz, for a preliminary injunction barring defendant Wells Fargo Bank, N.A. from foreclosing its mortgage on the plaintiff's residence at 73 Bolton Street, Marlborough, Massachusetts. After a preliminary hearing on the motion on January 18, 2011, I entered a temporary restraining order enjoining the foreclosure sale, which had been scheduled for that day, but permitted Wells Fargo to postpone the sale by public proclamation to a date after January 25, 2011. On January 25th, I held an evidentiary hearing on the motion. After reviewing the complaint and the evidence submitted by the parties, and for the reasons stated below, I will grant the plaintiff's motion and enter a preliminary injunction subject to certain conditions.

1

In accordance with Fed. R. Civ. P. 65, made applicable to this proceeding by Fed. R. Bankr. P. 7065, my decision whether or not to grant a preliminary injunction must be based on the evidence before me, including the verified complaint and affidavits submitted by the parties. I consider the plaintiff's complaint to be a verified complaint because the plaintiff filed an affidavit dated January 13, 2011 in which he verified the facts alleged in the complaint. The plaintiff also filed the affidavit of Joseph Molina of GIM Services, Inc., who averred that his office submitted a loan modification application to Wells Fargo on behalf of the plaintiff on November 29, 2011. According to Mr. Molina's affidavit, after several inquiries regarding the status of the loan modification application, his office was informed by telephone on January 19, 2011 (after the complaint had been filed) that the plaintiff's loan modification application had been denied, and that the reason given for the denial was the approaching foreclosure sale. Mr. Molina also averred that Wells Fargo has not yet communicated this denial to the plaintiff in writing. Lastly, the plaintiff submitted the affidavit of his attorney, Michael Shepsis, who averred that he had contacted Wells Fargo's foreclosure counsel on several occasions regarding the status of the loan modification and as of January 18, 2011, he had not received any notice that the application had been denied.

In order to obtain a preliminary injunction, the requesting party must demonstrate that (i) there is a likelihood of success on the merits of his claim; (ii) that he will suffer irreparable harm if the injunction is not granted; (iii) that the harm to the requesting party if the injunction is not granted is greater than the harm to the opposing party if it is granted; and (iv) that the public interest would not be adversely affected by the issuance of the injunction. *See Sunshine Development, Inc. v. F.D.I.C.*, 33 F.3d 106, 110-11 (1st Cir. 1994).

On the issue of irreparable harm, the plaintiff seeks in Counts I (breach of contract) and V of his complaint (breach of duty of good faith and reasonable diligence) judgment canceling the pending foreclosure sale of his home.   Accordingly, I find that absent an injunction the plaintiff will be irreparably harmed because a foreclosure sale will effectively deprive him of the relief requested in those counts of his complaint.

The question of whether the plaintiff is likely to succeed on the merits of his complaint is really the critical factor to be determined here.   *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991).   The plaintiff argues that Wells Fargo, which is a participant in the federal government's Home Affordable Modification Program ("HAMP"), breached its obligation under the program by scheduling a foreclosure sale of the plaintiff's property while the plaintiff's application for a loan modification was under consideration by it.   HAMP arose out of the Emergency Economic Stabilization Act of 2008, and is administered by the Federal National Mortgage Association ("Fannie Mae") as the agent of the Department of the Treasury.   *Speleos v. BAC Home Loans Servicing, L.P.*, 2010 WL 5174510, *1 (D. Mass. 2010).   The program requires that all mortgage loans owned or guaranteed by Fannie Mae or the Federal Home Loan Mortgage Corporation ("Freddie Mac" and together with Fannie Mae, the government-sponsored agencies or "GSEs") that meet certain requirements be evaluated by the loan servicers for loan modifications.   If a borrower qualifies, then the servicer is obligated to modify the loan in accordance with a predefined formula that reduces the borrower's monthly payment to 31% of his gross income for the first five years.[1]   In addition, many servicers of mortgage loans not owned by the GSEs have

---

[1] *See, e.g.*, Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages, Version 3.0 (hereinafter "HAMP Handbook") at 65, *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_30.pdf.

3

executed so-called Servicer Participation Agreements ("SPAs") with Fannie Mae, as agent for the Treasury Department, by which they agree to review and modify loans on similar terms. The Treasury Department, through Fannie Mae, has established guidelines that servicers must follow in evaluating and approving loan modification requests by borrowers. These guidelines are binding on each servicer by way of its servicing agreements with the GSEs or the SPA to which it was a party. I take judicial notice of the fact that Wells Fargo has executed an SPA, and is thus obligated to follow the HAMP requirements with respect to evaluating a loan modification application.[2]

The plaintiff points to Supplemental Directive 09-01, the first of the Treasury Department's HAMP guidelines, to support his allegation that servicers such as Wells Fargo are prohibited from foreclosing on mortgages that are under review for loan modification. This directive also requires servicers to seek alternatives to foreclosure in the event that a loan modification is denied.[3] The plaintiff alleges that Wells Fargo scheduled the foreclosure sale of his property while his loan was being reviewed for a HAMP modification, and that this alleged violation of the HAMP guidelines constituted a breach of contract and of Wells Fargo's duty to act in good faith and with reasonable diligence, justifying, among other things, cancellation of the foreclosure.

The plaintiff's breach of contract claim in Count I of the complaint is premised on the proposition that he is a third party beneficiary of the Wells Fargo's SPA or its servicing

---

[2] *See* Wells Fargo Servicer Participation Agreement, *available at* http://www.treasury.gov/initiatives/financial-stability/housing-programs/mha/Documents_Contracts_Agreements/093010wellsfargobanknaSPA(incltransmittal)-r.pdf; *see also* HAMP Handbook, *supra* note 1 at 17 (explaining the role of the SPA).

[3] Each of the GSEs has its own version of this directive, but all contain the prohibition against foreclosure while loans are under review for modification.

agreements with the GSEs. While the HAMP program was intended to benefit homeowners by helping them avoid foreclosure, the majority of courts considering the issue have held that consumers have no private cause of action as third party beneficiaries to enforce HAMP violations by their servicers. *See McKensi v. Bank of Am., N.A.*, 2010 WL 3781841, *5-6 (D. Mass. 2010) ("the existing case law weighs decisively in favor of defendant: numerous district courts have interpreted identical HAMP agreements and have come to the conclusion that a borrower is not a third party beneficiary.") (*quoting Hoffman v. Bank of Am., N.A*., 2010 WL 2635773 (N.D. Cal.) and citing additional cases); *but see Reyes v. Saxon Mortgage Services, Inc.*, 2009 WL 3738177, *2 (S.D. Cal.) (plaintiff's complaint alleging a third party beneficiary status with respect to a HAMP violation was "sufficient to state a plausible claim for breach of contract under a third party beneficiary theory"). Very recently, Judge Gorton of the U.S. District Court in Massachusetts cited the proposition in Restatement (Second) of Contracts § 311(b) that one must look to a contract itself to determine whether the parties intended to give rights to third party beneficiaries. *Speleos*, 2010 WL 5174510 at *5. He held that although the various SPAs and servicing agreements related to HAMP serve to benefit borrowers, nothing in the contracts themselves indicate an intent to create a private right of action in favor of borrowers. I agree with the majority view that the plaintiff is not a third party beneficiary of Wells Fargo's SPA or other relevant HAMP servicing agreements and, therefore, I find that the plaintiff is not likely to succeed on Count I of the complaint.

In Count V of his complaint, the plaintiff alleges that Wells Fargo breached its duty to act in good faith and with reasonable diligence by attempting to foreclose its mortgage on the plaintiff's property. Massachusetts courts have consistently held that in addition to complying

with the statutory requirements governing mortgage foreclosure set forth in Mass. Gen. Laws ch. 244, a mortgagee must act in good faith and must use reasonable diligence to protect the interests of the mortgagor. *Williams v. Resolution GGF OY*, 417 Mass. 377, 382-83 (1994). In *Snowden v. Chase Manhattan Mortgage Corp.*, 2003 WL 22519518 (Mass. Super.), the court held that a lender breached this duty by foreclosing a mortgage the day after receiving notice that the borrower had negotiated an agreement to sell the property at a price beneficial to the lender. The court noted that mortgagees in Massachusetts must act as a "trustee for the benefit of all persons interested." *Id.* at *2 (*quoting Taylor v. Weingartner*, 233 Mass. 243, 247 (1916)).

The plaintiff argues that by scheduling a foreclosure sale while the plaintiff's loan modification request was pending, Wells Fargo breached its duty to act in good faith and with reasonable diligence to protect the plaintiff's interests. The plaintiff's argument finds support in *Speleos*, which concluded that even though the borrowers had failed to state a claim for relief under third party beneficiary theory, they could state a claim for negligence on the theory that the defendants had a duty under the HAMP guidelines not to proceed with a foreclosure sale while evaluating the borrowers for a loan modification. *Speleos*, 2010 WL 5174510 at *6. The plaintiff's allegation in Count V of the complaint that Wells Fargo breached its duty of good faith and reasonable diligence is comparable to the negligence claim in *Speleos*.

The evidence thus far indicates that Wells Fargo scheduled and intended to conduct a foreclosure sale of the plaintiff's property while the plaintiff's request for a loan modification was pending before it. Even if the modification was denied on January 19, 2011, eight days prior to the rescheduled foreclosure sale, the plaintiff was not given written notice of the denial nor was he offered other foreclosure mitigation options as required under HAMP guidelines. I find,

6

therefore, that there is a substantial likelihood that the plaintiff will prevail on Count V of his complaint.

In addition, I find that the plaintiff has satisfied the remaining requirements for injunctive relief. While it is possible that the value of the plaintiff's property may depreciate as this case proceeds (although Wells Fargo offered no evidence on this point), I find that any potential detriment to Wells Fargo from depreciation is outweighed by the enormity of the harm to the plaintiff from a foreclosure sale. Further, my order that the plaintiff make payments to the Chapter 13 trustee will protect Wells Fargo from depreciation and unpaid real estate taxes in the event it ultimately prevails in this action. Finally, I find that it is in the public interest to ensure that lenders foreclose on properties only when they are entitled to do so. Also, the neighbors surrounding the plaintiff's property will likely benefit if foreclosure can be avoided.

Under Fed. R. Bankr. P. 7065 the court may require a party who benefits from a preliminary injunction to post security to protect the enjoined party in the event that the injunction turns out to have been wrongly issued. Here, the plaintiff's first and second amended Chapter 13 plans filed in the main case, dated September 24 and October 11, 2010 respectively, each contained provisions in which the plaintiff agreed to make monthly payments to Wells Fargo while his loan modification application was under review. At the evidentiary hearing on the plaintiff's motion, the plaintiff's counsel conceded that these payments have not been made to date. The Chapter 13 trustee noted that the plaintiff's amended Schedule J accompanying his bankruptcy petition lists a total of $1800 in expenses to be dedicated to home mortgage and real estate tax payments. In his memorandum of law in support of his motion for injunctive relief, the plaintiff indicates that his current monthly income is $5829, plus $1,200 in rental income from a tenant.

7

Based on these amounts, a hypothetical HAMP loan modification would involve an initial monthly payment of $1806.99, equal to 31% of total income, after subtracting 25% of the rental income to account for vacancy risk. Accordingly, the preliminary injunction will be conditioned on the plaintiff's making monthly payments of $1800 to the Chapter 13 trustee. This payment requirement shall be retroactive to October 1, 2010 (the first month after the plaintiff proposed to make these payments in his September 24, 2010 amended Chapter 13 plan). Payments shall be held by the trustee for the benefit of Wells Fargo and paid to Wells Fargo in the event it prevails in this action.

The plaintiff shall make payments of $1800 per month to the Chapter 13 trustee on the first day of each month beginning on February 1, 2011, with a ten day grace period for late payment. In order to catch up on payments due for October through January, the plaintiff shall make a double payment of $3600 on the first day of March, April, May and June. The failure of the plaintiff to make any payment when due will be grounds for vacating the injunction.

A separate order shall enter.

Dated: January 26, 2011                                                                By the Court,

                                                                                        Melvin S. Hoffman
                                                                                        U.S. Bankruptcy Judge